AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Sergio Vargas GARIBAY, a/k/a "Thricky", | ) | Case No. 4-12-70244 |
| Defendant(s) | ) | |



## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 23, 2012__ in the county of __Alameda__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute and Distribution of a Controlled Substance (Methamphetamine) |
| | Maximum Penalties: 20 years prison<br>$1 million fine<br>3 years minimum supervised release<br>Life maximum supervised release<br>$100 mandatory special assessment |

This criminal complaint is based on these facts:

See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

APPROVED AS TO FORM:
_/s/ Martin_
AUSA BRIGID S. MARTIN

_/s/_
Complainant's signature

Micah K. Wellman, ATF Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/29/12

_/s/_
Judge's signature

City and state: Oakland, California

Hon. Laurel Beeler
Printed name and title



## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Micah K. Wellman, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, hereby declare as follows:

### I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since April 1999. During my employment with ATF, I have participated in investigations of illicit drug trafficking organizations. In the course of these investigations, I have directed undercover agents and informants and planned, participated in, and/or supervised the controlled purchase of drugs from suspects; conducted physical surveillance, wire surveillance and electronic surveillance; and participated in the execution of no fewer than twenty state or federal arrest warrants and search warrants. Prior to my employment with ATF, from 1995 to 1997, I was employed as an Inspector with the U.S. Customs Service, now known as the Bureau of Immigration and Customs Enforcement. As an Inspector, I received training related to the identification of narcotics, the terminology used to refer to the various types of illicit drugs, the types of criminal organizations involved in smuggling illicit drugs into the United States and methods used to smuggle illicit drugs into the United States. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

### II. PURPOSE OF THIS AFFIDAVIT

2. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging Sergio Vargas GARIBAY, a/k/a Thricky, with possession with intent to distribute and distributed methamphetamine in violation of 21 U.S.C. § 841(a)(1).

3. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about February 23, 2012, GARIBAY possessed with intent to distribute and distributed methamphetamine in violation of 18 U.S.C. § 841(a)(1).

1  The statements contained in this affidavit are based on information provided to me by law
2  enforcement officers as well as my training, experience, and knowledge of this investigation.
3  **III.　PROBABLE CAUSE**
4  　　　4.　　On February 15, 2012, a Confidential Informant (CI)[1] contacted ATF Senior
5  Special Agent (SSA) Robert Tucker and told agents that Sergio Vargas GARIBAY was involved
6  in illegal firearms and narcotics trafficking.
7  　　　5.　　On February 18, 2012, at the direction of law enforcement, the CI placed a call to
8  GARIBAY and arranged a meeting between GARIBAY, the CI, and SSA Tucker, posing
9  undercover as an interested purchaser of methamphetamine and firearms. The call was recorded.
10 　　　6.　　On February 21, 2012, at the direction of law enforcement, the CI called
11 GARIBAY and arranged to meet him later that same day in the Foothill Square Center parking
12 lot at 10700 MacArthur Boulevard. The call was not recorded but was made in the presence of
13 law enforcement. GARIBAY did not show up for the meeting.
14 　　　7.　　On the evening of February 21, 2012, GARIBAY called the CI and arranged to
15 meet with the CI and the undercover agent on February 23, 2012, to sell the undercover agent
16 two ounces of methamphetamine in exchange for $1,700. The call was not recorded. The CI
17 called SSA Tucker at approximately 6:46 p.m. on February 21, 2012 and reported the phone call
18 to SSA Tucker.
19 　　　8.　　On February 23, 2012, SSA Tucker and the CI met with GARIBAY at a residence
20 located at 9221 Hillside Drive in Oakland. GARIBAY invited SSA Tucker to come inside the
21 house. When SSA Tucker approached the house, the front door was unlocked and open.
22 　　　9.　　GARIBAY told SSA Tucker to follow him into the bathroom. In the bathroom,
23 GARIBAY produced a baggie of suspected methamphetamine. SSA Tucker stated he did not
24 have a scale. GARIBAY told SSA Tucker that he had a scale in his car. When SSA Tucker said
25 he did not, SSA Tucker observed GARIBAY go out to the Acura in the driveway that GARIBAY

---

[1] The CI is a convicted felon known to the ATF but not previously used as a CI. The CI is a paid informant.

had arrived in and retrieve a scale. GARIBAY then returned to the bathroom and weighed the baggie of methamphetamine. SSA Tucker saw the scale read approximately 40 grams.

10. GARIBAY then informed SSA Tucker that he had more methamphetamine in the bedroom. GARIBAY left the bathroom and went into the adjacent bedroom. A short time later, GARIBAY returned to the bathroom with a second baggie of suspected methamphetamine.

11. GARIBAY removed an amount of methamphetamine from the second baggie and put it into a third baggie. GARIBAY weighed the third baggie. SSA Tucker saw the scale read 16 grams. GARIBAY kept the remainder of the methamphetamine in the second baggie.

12. GARIBAY gave the first baggie containing 40 grams of methamphetamine and the third baggie containing 16 grams of methamphetamine to SSA Tucker. In exchange, SSA Tucker paid GARIBAY $1,700 in U.S. currency. The transaction was recorded.

13. The suspected methamphetamine given to SSA Tucker by GARIBAY field tested positive for methamphetamine.

## IV. CONCLUSION

14. Based on the facts and information detailed in the affidavit, I believe probable cause exists that, on or about February 23, 2012, Sergio Vargas GARIBAY possessed with intent to distribute and distributed methamphetamine in violation of 21 U.S.C. § 841(a)(1), when he sold methamphetamine to an undercover ATF agent in exchange for $1,700 in U.S. currency. As such, I respectfully request a warrant for his arrest.

///
///
///
///
///
///
///
///

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my knowledge, information and belief.

Micah Wellman
Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives

SWORN BEFORE ME
ON FEBRUARY 29, 2012

HONORABLE LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE