MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

BRIGID S. MARTIN  (CABN 231705)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
Oakland, California 94612
Telephone:  (510) 637-3697
Facsimile:   (510) 637-3724
E-Mail: brigid.martin@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 12-0177 CW |
|     Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
|     v. ) | |
| SERGIO VARGAS GARIBAY, ) a/k/a "Tricky," ) | Hearing Date:  November 19, 2012<br>Time:  2:00 p.m. |
|     Defendant. ) | |

      The United States requests that the Court sentence Defendant Sergio Garibay on the three counts of conviction – possession with intent to distribute and distribution of methamphetamine (21 U.S.C. § 841(a)(1)) (Counts One and Two), and being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)) (Count Three) – to a total term of imprisonment of 151 months, a 4-year term of supervised release, a $200 special assessment, and forfeiture of the firearm.

I.    STATEMENT OF FACTS

      In or about February 2012, federal agents learned that the defendant Garibay, also known as "Tricky," was a methamphetamine and firearms trafficker.  Undercover federal agents engaged in an operation to investigate these allegations.  Ultimately, an undercover federal agent

conducted two separate multiple-ounce methamphetamine purchases from the defendant. During the second transaction, the defendant also sold the agent a rifle. The defendant was arrested immediately following the second transaction. Both of the transactions, as well as phone calls between the agent and the defendant, were recorded.

On February 23, 2012, an undercover agent met with the defendant at a residence located at 9221 Hillside Drive in Oakland; this was not the defendant's residence. Presentence Report (PSR) at ¶6. The defendant had agreed to sell two ounces of methamphetamine to the agent and asked the agent to meet him at the address on Hillside Drive to conduct the transaction. *Id.* at ¶¶ 6-7. The defendant invited the agent inside the house on Hillside Drive and led the agent to a bathroom where the defendant produced a large baggie of methamphetamine. *Id.* The defendant then went back out to his car and retrieved a digital scale. *Id.* The defendant returned to the bathroom and weighed the methamphetamine; the scale read approximately 40 grams. *Id.* The defendant then left the room, saying he needed to go retrieve another 16 grams. *Id.* A short time later the defendant returned with a second baggie of methamphetamine from which he weighed out 16 grams. *Id.* The defendant then gave the 56 grams of methamphetamine he had weighed out to the agent. In exchange, the agent paid the defendant $ 1,700. *Id.* The agent told the defendant he wanted to buy a firearm as well as more methamphetamine. The defendant agreed to sell these items to the agent. The defendant told the agent to call him "Tricky," and the defendant and agent exchanged cell phone numbers so they could do future deals directly with one another.

On March 1, 2012, the agent set up a second purchase of methamphetamine and a firearm from the defendant. The defendant agreed to sell four (4) ounces of methamphetamine and a firearm to the agent. Once again, the defendant asked the agent to meet him at the residence on Hillside Drive. *Id.* at ¶ 8-10. When the agent arrived, the defendant told him he only had approximately three (3) ounces of methamphetamine to sell that day, instead of the four (4) ounces they had discussed over the phone. *Id.* The defendant led the agent to the bathroom where he weighed out 86 grams of methamphetamine on a digital scale. *Id.* The defendant gave the methamphetamine to the agent; the agent paid the defendant $2,600 for the drugs. *Id.* The

UNITED STATES' SENT'G MEM.
CR 12-00177 CW                                                   2

defendant then handed a blue bag to the agent containing a rifle. *Id.* The agent recognized the blue bag as the same bag that he had seen being carried by another individual when the agent walked through the house to the bathroom. *Id.* The agent paid the defendant $300 for the rifle. The agent then asked the defendant to show him how to use the rifle. *Id.* The defendant called in the individual previously seen carrying the blue bag. This individual demonstrated how to operate the firearm and pull the trigger. *Id.*

The defendant was subsequently arrested on March 1 in front of the residence where both of the drug deals, and gun deal, had taken place. *Id.* at ¶ 11. At the time of the arrest, the defendant was sitting in the right rear seat of a Toyota parked in front of the residence. In the space underneath the right front passenger seat, accessible to the defendant in the backseat, agents found an additional 3.7 grams (net weight) of methamphetamine and $2,800 currency. The currency was confirmed through the serial numbers to be the buy money used by the agent. *Id.* Although at the plea hearing the defendant did not admit that the 3.7 grams of methamphetamine were his, at a later meeting with the government and U.S. Probation, the defendant admitted that when law enforcement arrived he was in the backseat of the Toyota and he laid down and hid the money under the passenger seat. When Defendant was arrested, in an effort to avoid charges, which he had done successfully in the past, he told the officers he was working with California Highway Patrol (CHP), which was not true. *Id.* at ¶ 16.

On July 17, 2012, Defendant pleaded guilty to all three counts of the Indictment filed in this case, charging him with possession with intent to distribute 50 grams or more of a mixture containing a detectable amount of methamphetamine (Counts One and Two), and being a felon in possession of a firearm (Count Three). The parties did not enter a Plea Agreement in this case; the Defendant made an open guilty plea to the Court. As such, the parties have no agreement on the guidelines or the appropriate sentence for Defendant in this case.

On September 18, 2012, at the request of the defense, the defendant met with the government and U.S. Probation. During the meeting, among other things, Defendant reported that he was previously associated with the Border Brothers gang, until approximately 2009, when he dropped out. PSR at ¶ 81. Defendant also reported that he used some of the

methamphetamine from the same batch that he later sold to the agent on February 23. *Id*. at ¶ 90. Significantly, during the meeting the Defendant was not completely candid. *See id*. at ¶ 17

II. UNITED STATES SENTENCING GUIDELINES CALCULATIONS

The United States agrees with U.S. Probation that the Guidelines should be calculated as follows, with the guidelines for one of the drug counts driving the calculation:

Count One – Possession with Intent to Distribute Methamphetamine (21 U.S.C. § 841(a)(1))

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(a)(5) (Between 50 - 150g actual methamphetamine) | | 32 |
| b. | Specific Offense Characteristic, U.S.S.G. § 2D1.1(b)(1) (Dangerous weapon possessed during the crime) | | +2 |
| c. | Acceptance of Responsibility, U.S.S.G. § 3E1.1 | | -3 |
| d. | Adjusted Offense Level | | 31 |

Defendant qualifies for a 2-level adjustment for possessing the firearm during the course of his drug trafficking crime. This enhancement should be "applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Appl'n Note 3. The government further agrees with U.S. Probation that the Defendant's Criminal History Category is IV. These calculations result in a sentencing range of 151-188 months imprisonment. Because the Defendant was charged with possession with intent to distribute more than 50 grams of a substance or mixture containing methamphetamine, he must be sentenced to at lest 60 months in prison.

III. SENTENCING ARGUMENT

After *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory, but are advisory. *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008). Sentencing proceedings begin by correctly calculating the applicable Guidelines range. *Id.* at 991. In this sense, the Guidelines are "the starting point and the initial benchmark." *Id.* The sentencing court should then consider the 18 U.S.C. § 3553(a) factors to further determine what sentence would be reasonable and appropriate. *Id.* at 991-92. If the sentencing court decides that a sentence outside the Guidelines is warranted, the court must consider the extent of the deviation and ensure that the justification is significantly compelling to support the

UNITED STATES' SENT'G MEM.
CR 12-00177 CW                              4

degree of the variance. *Id.* at 991.

Defendant's applicable Guidelines range is 151-188 months imprisonment, based on the amount of actual (pure) methamphetamine he possessed for sale. Although this amount of methamphetamine can qualify for a ten (10) year mandatory minimum term of imprisonment, in this case the government did not have the purity results at the time of the Indictment and did not supersede and allege the greater amount prior to the Defendant entering his guilty plea. Therefore, he is only subject to the five (5) year mandatory minimum term. But for sentencing consistency and to provide a sentence that Congress intended for someone with this amount and purity of methamphetamine, the government urges the Court to sentence the Defendant to 151 months, viewing 120 months as a benchmark for a low sentence or sentencing floor in this case. The Defendant has sold methamphetamine or possessed it for sale numerous times in the past. The Defendant is also a methamphetamine user who is familiar with the purity of the drug and, in fact, knew the purity of the methamphetamine he sold to the agent because he had used some from that batch. Thus the guidelines level based on the amount and purity of the methamphetamine are an appropriate starting point from which to assess the appropriate sentence for this Defendant.

Defendant has felony convictions for drug possession and vehicle theft, and misdemeanor convictions for drugs, vehicle theft, and evading the police. But the Defendant has a long criminal history that is not adequately captured by looking only at his criminal convictions. More than four full pages of the PSR cover arrests and other criminal conduct of the Defendant. Many of these incidents involved weapons. Nearly all of them involved methamphetamine.

In 2005, the Defendant was arrested after police found a large knife, methamphetamine and a pipe in his car. PSR at ¶ 49. In 2006, the Defendant was arrested again and police found brass knuckles, methamphetamine, and a scale in his car. *Id.* at ¶ 51. In 2007, Defendant was pulled over for running a red light and officers found in his car a loaded Smith & Wesson firearm. Defendant's probation was revoked in lieu of filing new charges. *Id.* at ¶ 54. In July 2011, police officers searched Defendant's residence and found a .22 caliber rifle and ammunition, similar to the one he sold the agent in this case. In December 2011, the Defendant

and at least one other man broke in or attempted to break in to his former roommate's garage. The roommate confronted them and the Defendant pointed a gun at her and told her to, "Get back." *Id.* at ¶ 62.  The Defendant is not merely a non-violent drug user.  His long criminal history is peppered with weapons possession, including knives and guns.  And while Defendant denies that any of these guns were his, or that he pointed a gun at his roommate, the pattern of the weapons possession charges suggests otherwise.  Weapons are tools of the trade for drug dealers, particularly firearms, which they use to protect their stash and earnings from would-be robbers. It makes sense that the Defendant would carry weapons, including firearms, on occasion.  While clearly the Defendant has a significant drug habit himself, he has also been selling methamphetamine for a number of years.  His history as a drug dealer is illustrated in the facts underlying his numerous arrests which involve multiple baggies of methamphetamine, large amounts of cash, and scales.  PSR at ¶¶ 49, 54, 55, 58, 59, and 64.

      Defendant has earned a sentence of 151 months.  He is a methamphetamine user who is out of control in his life, stealing cars and evading the police, and trafficking guns and doing multiple-ounce methamphetamine deals.  Defendant needs a significant term in prison to protect the public, to deter him and others similarly situated from committing such crimes – and, more importantly, from committing such crimes over and over again – and to punish him for these crimes.  Defendant has avoid prosecution on similar crimes in the past and is trying to minimize his conduct now in a further effort to avoid significant time in prison.  Because he was able to escape prosecution in the past, however (see PSR at ¶ 16 for more detail), and has not taken advantage of that but instead has used it to try and scam law enforcement while he continued to commit crimes, Defendant is deserving of a sentence within his guidelines range, albeit at the low end given how high those guidelines are.

      Finally, although Defendant has pleaded guilty, the Defendant's dishonesty reflects that Defendant is not likely to be a the point in his life where he truly changes and stops committing crimes, and that he will likely reoffend.  Defendant was not candid during his interview with law enforcement, has a history of lying to law enforcement in the past in an effort to manipulate the system, and is now attempting to minimize past conduct to downplay his drug and firearm

trafficking.

IV.     CONCLUSION

      For the foregoing reasons, as well as the reasons set forth in the presentence report, the United States respectfully requests that the Court adopt the sentence recommended by the government and U.S. Probation and sentence Defendant to a term of imprisonment of 151 months imprisonment followed by 4 years of supervised release, and order Defendant to pay a $300 special assessment and forfeit the firearm.

DATED:     November 12, 2012                    Respectfully Submitted,

                                                             MELINDA HAAG
                                                             United States Attorney

                                                             /s/ Brigid S. Martin
                                                             BRIGID S. MARTIN
                                                             Assistant United States Attorney